UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
DDK HOTELS, LLC,
DDK/WE HOSPITALITY PARTNERS, LLC,
DDK/WE HOTELS MANAGEMENT, LLC,

                              Plaintiffs,                        MEMORANDUM AND ORDER
                                                                  19-CV-00226

     - against -

WILLIAMS-SONOMA, INC.,
WILLIAMS-SONOMA STORES, INC.,

                            Defendants.
----------------------------------------------------------x
GLASSER, Senior United States District Judge:

     Plaintiffs DDK Hotels, LLC ("DDK Hotels"), DDK/WE Hospitality Partners, LLC ("DDK Hospitality"), and DDK/WE Hotels Management, LLC ("DDK Management") (collectively, "Plaintiffs") bring this action against defendants Williams-Sonoma, Inc. ("Williams-Sonoma") and Williams-Sonoma Stores, Inc. ("West Elm") (collectively, "Defendants") for breach of contract, breach of the implied covenant of good faith and fair dealing, breach of fiduciary duty, aiding and abetting breach of fiduciary duty, and unjust enrichment. Defendants move to dismiss the complaint under Rules 12(b)(1), 12(b)(6), and 12(b)(7) of the Federal Rules of Civil Procedure. For the reasons that follow, their motions are **GRANTED IN PART** and **DENIED IN PART**.

## BACKGROUND

     This case arises from a business venture gone awry. In 2015, West Elm began developing a chain of hotels to complement its retail business in home furnishings. (Am. Compl. ¶ 10). As part of that strategy, West Elm's President, James Brett, sought a joint venture partner with expertise in hotel management. (*Id.*). West Elm's parent company and the owner of the West Elm trademark, Williams-Sonoma, assisted in the search. (*Id.* ¶¶ 6, 9–10). Among the candidates was

DDK Hotels, a hospitality company managed by Kimberly Phoebus, David Bowd, and David Wasserman.  (*Id.* ¶¶ 2, 10).

According to the complaint, after interviewing multiple prospects, Defendants selected DDK Hotels to be "their joint venture partner and exclusive operator."  (*Id.* ¶ 11).  The winning proposal was a collection of boutique hotels featuring the West Elm mark.  (*Id.* ¶ 23).  Following its selection, DDK Hotels executed a non-binding term sheet with Williams-Sonoma.  (ECF No. 53-2, "Term Sheet").  The Term Sheet sets out their business objectives and contemplates the creation of a joint venture.  To that end, DDK Hotels formed two subsidiaries, DDK Hospitality and DDK Management, also managed by Phoebus, Bowd, and Wasserman.[1]  (Am. Compl. ¶ 16).

## I.     The Joint Venture

Following months of negotiations, DDK Hospitality and West Elm executed an LLC agreement establishing the anticipated joint venture, West Elm Hotels, LLC (the "JV").  (ECF No. 26, "JV Agreement").  DDK Hospitality and West Elm each owns 50% of the JV and are its only members.  (Am. Compl. ¶¶ 19–20).  Although the JV is member-managed, the members must act through a six-person board, to which DDK Hospitality and West Elm each appoints three directors. Each group of appointees retains 50% voting rights.  (JV Agreement § 7).  Where board approval is required under the JV Agreement, both groups of appointees must vote in the affirmative.  (*Id.*).

The JV Agreement sets forth a somewhat counterintuitive business arrangement centered around licensing West Elm's trademark.  Under the JV Agreement: (1) Williams-Sonoma licenses the mark to the JV; (2) the JV sublicenses the mark to hotel owners for royalties paid to West Elm[2];

---

[1] Although not entirely clear from the complaint, Plaintiffs apparently allege that in and around this time a joint venture formed between Williams-Sonoma, West Elm, and DDK Hotels. As addressed *infra*, the alleged facts do not plausibly support that finding.

[2] The complaint leaves vague the precise mechanics of the sublicensing arrangements. (*See* Am. Compl. ¶ 43). The JV Agreement also inconsistently states that royalties are paid "exclusively" to

Case 1:19-cv-00226-ILG-CLP   Document 76   Filed 07/20/20   Page 3 of 24 PageID #: 2314

and (3) the hotel owners then execute two agreements, a "Hotel Management Agreement" ("HMA") and a "Technical Services Agreement" ("TSA"), with DDK Hospitality or one of its affiliates.[3]  (*See id.* § 10).  This multi-step process apparently limited West Elm's financial exposure while incentivizing DDK Hospitality to promote the JV.

An important component of the JV is that the relationship between DDK Hospitality and West Elm is an exclusive one.  Section 9(a) of the JV Agreement prohibits DDK Hospitality and West Elm—or any of their affiliates—from engaging in "Conflicting Interests."  (Am. Compl. ¶ 50).  Conflicting Interests are broadly defined as "the creation, ownership, operation, development or management" of a hotel in one of the thirty largest domestic cities.  (*Id.* ¶¶ 52–53).  That proscription extends not only to consummated transactions, but communications concerning Conflicting Interests as well.  (*Id.* ¶ 50).  One notable exception exists; conduct that otherwise violates Section 9(a) is permissible if performed "through" the JV, though the JV Agreement does not elaborate further.  (*Id.*).

## II.      Demise of the Joint Venture

Although three sets of HMAs and TSAs for hotels in Indiana, Michigan, and California were initially executed, that progress was short-lived.  (*Id.* ¶ 42).  Circumstances apparently changed in 2017, when Alex Bellos replaced Brett as West Elm's President.  At all relevant times, Bellos also served as an officer of Williams-Sonoma.  (*Id.* ¶ 46).  Unlike Brett, Bellos preferred a "quick-to-market" business model that departed from the boutique hotels concept previously envisioned for the JV.  (*Id.* ¶¶ 47–49).  Disagreement over Bellos's new approach created a rift

---

West Elm, but elsewhere states that they are payable to Williams-Sonoma. (*See* JV Agreement §§ 10(j), 12(b)). Resolution of these issues is not necessary to the disposition of the motion to dismiss.

[3] Under the HMAs, hotel owners pay DDK Hospitality for hotel management services. Under the TSAs, hotel owners pay DDK Hospitality, or its affiliate, for overseeing aspects of hotel construction and design. (*See* JV Agreement § 10(g); Am. Compl. ¶¶ 84–86).

between the parties, with Plaintiffs on one side and Defendants on the other.  Wasserman sided with Defendants.

In 2018, Plaintiffs claim that Defendants—aided by Wasserman—attempted to replace DDK Hospitality and exclude it from the JV.  As part of that campaign, Defendants allegedly pursued a venture with Aspen Lodging Group, LLC ("Provenance").  (*Id.* ¶ 64).  In May 2018, a Williams-Sonoma director put Bellos in contact with Provenance's President, Bashar Wali, to discuss a "strategic partnership" involving West Elm hotels.  (*Id.* ¶ 65).  Phoebus and Bowd were not included in those communications.  (*Id.* ¶ 66).  Bellos did, however, encourage Phoebus and Bowd to sell their interest in DDK Hospitality to Provenance.  Although the complaint does not specify, it alleges that Bellos provided "misleading" information that prompted Phoebus and Bowd to consider a potential sale to Provenance.  (*Id.* ¶ 68).

Around that time, Phoebus and Bowd reminded Bellos via email that: "any future conversations with Provenance or similar groups should only occur after obtaining our prior approval."  (*Id.* ¶ 56).  Phoebus and Bowd later terminated communications with Provenance before a deal could be reached.  (*Id.* ¶ 68).  In response, Bellos allegedly claimed that he lacked "confidence" in DDK Hospitality and refused to discuss JV-related matters with Phoebus or Bowd. (*Id.* ¶¶ 80–81).  Bellos asserted that "the boutique urban hotel" concept previously envisioned for the JV "was irrelevant, that it was his company, and that DDK had to do what he said."  (*Id.* ¶ 81). Needless to say, relations frayed soon thereafter.

Unbeknownst to Phoebus and Bowd, negotiations between Defendants and Provenance continued with Wasserman's assistance.  In September 2018, Wasserman allegedly emailed Bellos, saying: "We should cut our deal with Bashar [Wali of Provenance] - if we can next week. Time is critical i [sic] believe."  (*Id.* ¶ 69).  Wasserman then informed Wali that:

> Alex [Bellos] will do what it takes to "pay" for the [Provenance hotels]
> conversions.... We are in agreement, Alex and me, how we would amend the JV if
> you come in. I just need to frame out my deal with you and I we [sic] will be in
> business in 30 days – assuming I remain in.

(*Id.* ¶ 70).  Next, Wasserman allegedly sent Defendants' in-house counsel a term sheet for a joint

venture between West Elm and Provenance ("Proposed Term Sheet").  (*Id.* ¶ 72).  The Proposed

Term Sheet seeks to rebrand existing Provenance hotels with the West Elm mark and give

Provenance "exclusive" rights to develop and manage West Elm hotels "anywhere." (*Id.*).  Again,

Phoebus and Bowd were unaware of these communications.  (*Id.* ¶ 78).  Although the complaint

suggests a deal was imminent, Plaintiffs do not allege that the Proposed Term Sheet was ever

executed.

These allegedly unfaithful acts were not limited to Provenance.  With Wasserman's

assistance, Defendants supposedly explored Conflicting Interests with Marriott International, Toll

Brothers, Inc., Cindat USA, and Trinity Investments.  (*Id.* ¶ 79).  The complaint further alleges

that Defendants stymied the JV's expansion to new markets in an effort to squeeze out DDK

Hospitality.  For example, when DDK Hospitality pursued opportunities in Denver and

Philadelphia, Bellos supposedly informed Phoebus that she would not receive Defendants'

support. (*Id.* ¶¶ 92, 94).  Phoebus asked Bellos to reconsider, but he never responded.  (*Id.* ¶¶ 95–

96).  Just weeks later, Wasserman introduced West Elm to a different Denver-based hotel operator,

without Phoebus or Bowd.  (*Id.* ¶ 97).  As with Provenance, Plaintiffs do not allege that the

proposed transactions were completed.

By November 2018, relations had completely strained.  Tensions culminated when

Phoebus and Bowd were denied access to the JV's offices and a West Elm representative escorted

a DDK Hospitality employee from the premises.  (*Id.* ¶¶ 99–100).  Defendants have since refused

to work on or discuss any JV projects.  (*Id.* ¶ 101).

### III.   The Present Action

On December 12, 2018, Plaintiffs commenced this case asserting five causes of action. Count One alleges that West Elm breached Section 9(a) of the JV Agreement by engaging in numerous Conflicting Interests.  Count Two alleges that West Elm breached an implied covenant of good faith and fair dealing in the JV Agreement.  Count Three alleges that West Elm and Williams-Sonoma aided and abetted Wasserman's breaches of the fiduciary duty he owed to DDK Hospitality and DDK Management.[4]  Count Four alleges that West Elm and Williams-Sonoma breached their fiduciary duties owed to Plaintiffs as joint venturers.  Count Five alleges that West Elm and Williams-Sonoma were unjustly enriched by Plaintiffs' contributions to the JV.

Defendants move to dismiss the complaint under Rules 12(b)(7) and 12(b)(6).  They contend that Wasserman is a necessary and indispensable party and, because his joinder would destroy diversity, dismissal is required.  Defendants also seek to dismiss each count for failing to state a claim.

### IV.   Supplemental Complaint

With the motion to dismiss pending and fully briefed, Plaintiffs moved for leave to supplement the complaint, which was granted by Judge Pollak on March 12, 2020.  The supplemental complaint adds a narrow claim by DDK Hospitality under Count One for breach of Section 21(h) of the JV Agreement.  (Supp. Compl. ¶ 119).  DDK Hospitality alleges that, after this case began, West Elm initiated a proceeding in Delaware's Court of Chancery to dissolve the JV.  (*Id.* ¶ 102).  DDK Hospitality moved to dismiss the action, arguing that West Elm failed to

---

[4] Count Three omits DDK Hotels when alleging that Wasserman "owed" and "breached his fiduciary duties." (Am. Compl. ¶¶ 128–129). Accordingly, the Court will construe the claim as only alleged by DDK Hospitality and DDK Management. In any event, even if DDK Hotels were to assert the claim, it would fail for the reasons set forth below.

plead a claim for dissolution.  The Court of Chancery agreed and dismissed the action without prejudice.  (*Id.* ¶¶ 105–106).  DDK Hospitality now seeks attorneys' fees and costs as the "prevailing party" under Section 21(h), which provides that:

> The non-prevailing Member shall pay upon demand all of the reasonable costs, charges and expenses including the court costs and fees and out-of-pocket expenses of counsel, agents and others retained by the prevailing Member incurred by the prevailing Member in enforcing the terms of the Agreement.

(*Id.* ¶ 109).  West Elm moves to dismiss the supplemental claim under Rules 12(b)(1) and 12(b)(6), asking the Court to compel arbitration in accordance with Section 16 of the JV Agreement.[5]

## LEGAL STANDARD

### I.   Motion to Dismiss Under Rule 12(b)(7)

Rule 12(b)(7) requires dismissal where a litigant fails to join a necessary and indispensable party as provided by Rule 19.  Under Rule 19, the analysis follows a two-step process.  The Court first determines whether the absent party is necessary.  A party is necessary if:

> (A) in that person's absence, the court cannot accord complete relief among existing parties; or (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii)

---

[5] Section 16 of the JV Agreement states, in relevant part:

> (a) <u>Mediation</u>. If the Members (acting through the Board) are unable to agree on a matter requiring Board or Member approval (a "*Deadlock*"), except as provided in Section 16(c), any Member may serve on the other Member a notice (a "*Deadlock Notice*") specifying the matter in dispute (the "*Disputed Matter*").
>
> . . . .
>
> (b) <u>Arbitration</u>. The parties unconditionally and irrevocably agree that . . . all Disputed Matters that are not resolved pursuant to the mediation process provided in Section 16(a) may be submitted by either Member to binding arbitration administered by the American Arbitration Association ("*AAA*") for resolution in accordance with the Commercial Arbitration Rules and Mediation Procedures of the AAA then in effect . . . . The parties' agreement to arbitrate and any and all disputes (except with respect to injunctive relief) is governed by and subject to the rules of the New York Arbitration Law and the Federal Arbitration Act, or, in each case, any successor or replacement statutes thereto. The . . . prevailing party shall be entitled to recover its reasonable attorneys' fees and arbitration costs.

> leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1). Where a party is necessary and joinder is feasible, the party must be joined. If joinder is not feasible, the Court next considers whether "in equity and good conscience" the case should be dismissed under Rule 19(b). However, courts are "extremely reluctant to grant motions to dismiss based on nonjoinder and, in general, dismissal will be ordered only when the defect cannot be cured and serious prejudice or inefficiency will result." *American Trucking Ass'n, Inc. v. New York State Thruway Auth.*, 795 F.3d 351, 357 (2d Cir. 2015) (quoting 7 Charles Alan Wright & Arthur R. Miller, Fed. Practice & Procedure § 1609 (3d ed. 2015)).

## II.     Motion to Dismiss Under Rule 12(b)(6)

It is axiomatic that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a Rule 12(b)(6) motion, the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The Court must accept well-pleaded factual allegations and draw all reasonable inferences in the plaintiff's favor. *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007). In addition to the facts alleged in the complaint, the Court may consider "any written instrument attached to the complaint," as well as "documents possessed by or known to the plaintiff and upon which it relied in bringing the suit." *Id.*

## III.    Motion to Dismiss Supplemental Complaint & Compel Arbitration

Defendants move to dismiss the supplemental claim and compel arbitration under Rules 12(b)(1) and 12(b)(6), citing uncertainty concerning which applies. However, because Defendants

move to compel arbitration, the Court applies a "standard similar to that applicable for a motion for summary judgment." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016) (citation omitted). Where, as here, "the undisputed facts in the record require the matter of arbitrability to be decided against one side or the other as a matter of law, [a court] may rule on the basis of that legal issue and 'avoid the need for further court proceedings.'" *Wachovia Bank, Nat'l Ass'n. v. VCG Special Opportunities Master Fund, Ltd.*, 661 F.3d 164, 172 (2d Cir. 2011) (citation omitted).

## DISCUSSION

### I.    Motion to Dismiss Under Rule 12(b)(7)

Defendants argue that this action should be dismissed because Wasserman is a necessary and indispensable party who cannot be joined. Relying almost entirely on Rule 19(a)(1)(B)(i),[6] Defendants contend that Wasserman is a necessary party because his "conduct is largely the focus of the litigation." (ECF No. 25, "Br." at 7). That argument is unavailing.

First, numerous courts have held that "it is the absent parties who are required to claim an interest in the action," not the named party. *Edrich v. Festinger*, No. 12-CV-4069 (MKB), 2017 WL 3575238, at *5 (E.D.N.Y. Aug. 17, 2017). While Defendants characterize this reading as a burdensome interpretation, it is consistent with a wealth of authorities in this Circuit. *Id.* (collecting cases); *but see Fagioli S.p.A. v. General Elec. Co.*, No. 14-CV-7055 (AJN), 2015 WL 3540848, at *5 (S.D.N.Y. June 5, 2015) ("The Court does not read the Rule so narrowly.").

---

[6] Defendants also argue that there is a risk of inconsistent rulings because they may be liable for aiding and abetting a breach of Wasserman's fiduciary duty, but that, in subsequent litigation, he may not be liable. That does not satisfy Rule 19(a)(1)(B)(ii), which is concerned with "[i]nconsistent obligations," where "a party is unable to comply with one court's order without breaching another court's order concerning the same incident." *Federal Ins. Co. v. Safenet*, 758 F. Supp. 2d 251, 258 (S.D.N.Y. 2010) (citation omitted).

Second, even assuming Defendants could assert Wasserman's interest on his behalf, they have not shown how the interest is impaired "*because of*" his absence.  *MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n, Inc.*, 471 F.3d 377, 387 (2d Cir. 2006).  The law makes clear that it "is not enough under Rule 19(a)[(1)(B)(i)] for a third party to have an interest, even a very strong interest, in the litigation.  Nor is it enough for a third party to be adversely affected by the outcome of the litigation.  Rather, necessary parties under Rule 19(a)[(1)(B)(i)] are *only those parties whose ability to protect their interests would be impaired because of that party's absence from the litigation*."  *Id.* (emphasis added).

In search of some valid impairment, Defendants assert that Wasserman might be prejudiced because the Court will construe his rights under the JV Agreement.  (ECF No. 31 at 26).  That argument is somewhat disingenuous.  Defendants themselves insist in their briefing that the JV Agreement does not "create any right in any person not a party [t]hereto."  (Br. 10).  Defendants do not argue that Wasserman is a party to the JV Agreement, nor have they shown that this is one of the rare instances where joinder of a non-contracting party is necessary.  *See Sanders v. WB Kirby Hill, LLC*, No. 16-CV-4596 (NGG)(ARL), 2019 WL 2393798, at *3 (E.D.N.Y. June 6, 2019) ("A nonparty to a commercial contract ordinarily is not a necessary party to an adjudication of rights under the contract." (citation omitted)).  Thus, Defendants have not demonstrated that Wasserman is a necessary party under Rule 19(a).

Having concluded that Wasserman is not a necessary party, the Court need not consider whether he is indispensable under Rule 19(b).  *See American Trucking*, 795 F.3d at 361.  Moreover, as Plaintiffs suggest in their papers, it appears that Wasserman may be impleaded without

destroying diversity, further rendering Rule 19(b) inapplicable.  Accordingly, Defendants' Rule 12(b)(7) motion is denied.[7]

## II.    Motion to Dismiss Under Rule 12(b)(6)

### A.    Breach of the JV Agreement

The JV Agreement is governed by Delaware law, under which a breach of contract claim requires (1) the existence of a contract, (2) a breach of an obligation imposed by that contract, and (3) damages.  *VLIW Tech., LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 612 (Del. 2003).  West Elm does not dispute the existence of the JV Agreement or its validity as a contract.  West Elm does contest, however, that an actionable breach and damages are plausibly alleged.

### i.    Actionable Breach

West Elm's principal argument is that Wasserman's participation in the alleged breaches renders the conduct permissible under Section 9(a), because it occurred "through" the JV.  That argument relies on the flawed premise that Wasserman acted on DDK Hospitality's behalf at all times.  However, ample allegations suggest that he did not.  For example, Wasserman told Wali that: "We are in agreement, [Bellos] and me, how we would amend the JV if you come in.  I just need to frame out my deal with you and I we [sic] will be in business in 30 days."  (Am. Compl. ¶ 70).[8]   Wasserman also allegedly negotiated the Proposed Term Sheet, which excluded DDK

---

[7] *Visión en Análisis y Estrategia, S.A. de C.V. v. Andersen*, No. 14-cv-8016 (SAS), 2015 WL 4510772 (S.D.N.Y. July 24, 2015) is not persuasive. Defendants frequently cite *Visión* for the pithy soundbite that nonparties are necessary where their "conduct is largely the focus of the litigation." *Id.* at *5. While that reasoning may have been relevant in *Visión*, it does not address the Rule 19 factors at issue here. *Visión*'s affirmance is not dispositive, either. There, among other things, it was conceded that the nonparties were necessary. 662 F. App'x 29, 32 (2d Cir. 2016).

[8] West Elm's argument is also flawed because not all of the alleged breaches involved Wasserman. The complaint cites numerous instances in which West Elm apparently engaged in Conflicting Interests *without* Wasserman. (*See, e.g.*, Am. Compl. ¶¶ 57–58, 61, 65).

Hospitality from a potential transaction with Provenance.  These allegations make it reasonable to infer that Wasserman did not act as an agent of DDK Hospitality.[9]

West Elm's argument is also at odds with the JV Agreement, which requires board approval before the JV may take certain actions, including:

(a)   selecting hotels or hotel projects that will become Branded Hotels;
(b)   approving the hotel owners and any transferees or assignees of a hotel owner;
(c)   approving Term Sheets (and modifications thereto);
            . . .
(l)   causing the Company to enter into another partnership, company or venture with any other Person or persons in pursuance of Company purposes;
(m)   changing the scope of the Company's business . . . .

(JV Agreement, Ex. C).  Many of the alleged breaches arguably fall within the ambit of that conduct, such as the selection and approval of a project involving Provenance and attempts to form a competing joint venture.  Without board approval, those acts cannot be performed "through" the JV.

West Elm also makes the tenuous argument that because Section 9(a) prohibits Phoebus, Bowd, and Wasserman from engaging in conflicting interests "individually," it must also empower them to act on DDK Hospitality's behalf individually.  But Section 9(a) is silent as to who can act for DDK Hospitality or the JV.  The provision makes clear, however, that both parties agreed to restrict competitive practices between them and their affiliates.  Therefore, an actionable breach of Section 9(a) is alleged.

### ii.   Damages

West Elm next argues that DDK Hospitality did not suffer damages because the alleged breaches resulted in no completed transactions.  Even if true, DDK Hospitality does not fail to

---

[9] DDK Hospitality's invocation of the "adverse interest" doctrine is unnecessary at this juncture. Section 9(a) of the JV Agreement only permits the parties to engage in Conflicting Interests through the JV. The complaint plausibly alleges that West Elm did not do so.

state a claim.  "The remedy for a breach of contract is intended to give the non-breaching party the benefit of the bargain by putting that party in the position it would have occupied but for the breach."  *eCommerce Indus., Inc. v. MWA Intelligence, Inc.*, No. CV 7471-VCP, 2013 WL 5621678, at *43 (Del. Ch. Sept. 30, 2013).  This requires considering "how the positions of the parties would differ in the 'but-for' world—*i.e.*, the hypothetical world that would exist if the [a]greement had been fully performed."  *Id.*

The complaint alleges that West Elm was on the verge of executing the Proposed Term Sheet with Provenance.  That agreement involved rebranding Provenance hotels with the West Elm mark, creating a competing joint venture, and giving Provenance exclusive rights to manage West Elm hotels.  (Am. Compl. ¶ 72).  The imminence of that transaction cannot be ignored.  In September 2018, Wasserman emailed Bellos that: "We should cut *our* deal [with Provenance] . . . *next week*."  (*Id.* ¶ 69 (emphasis added)).  Wasserman also informed Wali that Bellos would "do what it takes to 'pay' for the [Provenance hotels] conversions," and that they would "be in business in 30 days."  (*Id.* ¶ 70).  Based on these allegations, it is reasonable to infer that DDK Hospitality would have benefitted from a transaction with Provenance but-for the breach.[10]

More importantly, this case is similar to those where a party seeks to enforce a noncompete agreement.  In such cases, Delaware law is permissive with respect to damages.  *See, e.g.*, *Hough Assocs., Inc. v. Hill*, No. Civ. A. 2385-N, 2007 WL 148751, at *15 (Del. Ch. Jan. 17, 2007) ("[T]he Non-Competition Agreement protected [plaintiff]'s legitimate interests and is an enforceable contract. Further, the harm to these interests satisfies the damage prong of the breach of contract inquiry."); *Vitalink Pharmacy Servs., Inc. v. Grancare, Inc.*, No. 15744, 1997 WL 458494, at *12

---

[10] Whether or not a deal would have transpired remains an issue of fact for another day. The same may be said for the additional Conflicting Interests alleged in the complaint.

(Del. Ch. Aug. 7, 1997) (awarding injunctive relief when "the Court could not measure with any reasonable degree of confidence the financial harm that [plaintiff] would incur as a result of the Non-Competition Agreement violation").  Contrary to West Elm's insistence, DDK Hospitality need not plead damages with "specificity."  (Br. 19).  Furthermore, even if DDK Hospitality fails to prove compensatory damages, Delaware law allows for an award of nominal damages.  *See Glidepath Ltd. v. Beumer Corp.*, No. CV 12220-VCL, 2019 WL 855660, at *23 (Del. Ch. Feb. 21, 2019) ("Even if compensatory damages cannot be or have not been demonstrated, the breach of a contractual obligation often warrants an award of nominal damages." (citation omitted)).  Accordingly, West Elm's motion to dismiss the breach of contract claim is denied.

### B.    Breach of Implied Covenant of Good Faith & Fair Dealing

West Elm contends that DDK Hospitality's claim for breach of the implied covenant of good faith and fair dealing is impermissibly duplicative of the contract claim.  Whether or not it is duplicative, DDK Hospitality nevertheless fails to meet the doctrine's stringent requirements. Under Delaware law, the implied covenant "is a limited and extraordinary legal remedy."  *Nemec v. Shrader*, 991 A.2d 1120, 1128 (Del. 2010).  The doctrine is only successfully invoked where the breaching party "acted arbitrarily or unreasonably, thereby frustrating the fruits of the bargain that the asserting party reasonably expected."  *Id.* at 1126.  To prevail, the plaintiff must allege a specific implied contractual obligation "that the parties would have agreed to . . . had they negotiated the issue."  *Id.* at 1127 n.20 (citation omitted).  DDK Hospitality simply has not done so here.   Neither the complaint nor DDK Hospitality's papers adequately identifies what contractual obligation the parties would have agreed to had they negotiated it.   Instead, the complaint contains largely conclusory allegations based on almost identical facts as the contract claim.

To the extent distinct facts can be gleaned from the complaint, they relate to West Elm's refusal to carry out its duties as a JV member. While those allegations are not duplicative, DDK Hospitality encounters another problem: the doctrine may only be invoked if neither party anticipated the contractual gap. *Id.* at 1125. But the JV Agreement already has procedures for resolving such deadlocks. (*See* JV Agreement § 16). That the parties anticipated such issues renders the doctrine inapplicable. Thus, DDK Hospitality's claim for breach of the implied covenant of good faith and fair dealing is dismissed.

### C.    Breach of Fiduciary Duty

An actionable claim for breach of fiduciary duty requires a fiduciary duty owed, a knowing breach of that duty, and damages. *Johnson v. Nextel Commc'n's, Inc.*, 660 F.3d 131, 138 (2d Cir. 2011). Plaintiffs allege that Defendants owed them fiduciary duties as joint venturers. Defendants allegedly breached those duties when they engaged competitors, hindered efforts to expand the JV, and refused to participate in the JV's business. In support of dismissal, Defendants contend that the only members of the JV are DDK Hospitality and West Elm. The Court agrees.

### i.    Claims Asserted by DDK Hotels and DDK Management

The complaint is considerably short on facts alleging a joint venture involving either DDK Hotels or DDK Management. A joint venture exists where:

> (a) two or more persons enter into an agreement to carry on a venture for profit; (b) the agreement evinces their intent to be joint venturers; (c) each contributes property, financing, skill, knowledge, or effort; (d) each has some degree of joint control over the venture; and (e) provision is made for the sharing of both profits and losses.

*SCS Commc'ns, Inc. v. Herrick Co., Inc.*, 360 F.3d 329, 341 (2d. Cir. 2004).[11] The absence of any one element is fatal. Here, multiple elements are missing. For example, the complaint does not

---

[11] The parties do not engage in a choice of law analysis and rely on both New York and Delaware law, which the Court construes as consent to New York law. "The parties cite New York law

support a reasonable inference that either DDK Hotels or DDK Management agreed to join the JV or share its profits and losses. Almost no particularized allegations are made concerning DDK Management, let alone its agreement to carry on as a joint venturer. Although DDK Hotels is a party to the Term Sheet, that agreement is expressly non-binding and the JV Agreement joins only DDK Hospitality and West Elm as co-venturers. Accordingly, the claims asserted by DDK Hotels and DDK Management are dismissed.

### ii.   Claim Asserted by DDK Hospitality Against Williams-Sonoma

The complaint also does not establish a joint venture between DDK Hospitality and Williams-Sonoma. The written agreements at issue—the Term Sheet and JV Agreement—do not bind Williams-Sonoma as a joint venturer. The Term Sheet merely reflects Williams-Sonoma's intent to facilitate the development of West Elm hotels, but "it is not enough that two parties have agreed together to act in concert to achieve some stated economic objective." *Abeles, Inc. v. Creekstone Farms Premium Beef, LLC*, No. 06-CV-3893 (JFB)(AKT), 2010 WL 446042, at *8 (E.D.N.Y. Feb. 1, 2010) (citation omitted). Likewise, Williams-Sonoma is not a party to the JV Agreement, which does not create any right in any persons not a party thereto. (JV Agreement § 21(d)). Accordingly, neither document satisfies the first element of a joint venture.

To the extent DDK Hospitality relies on an oral agreement, the complaint does not provide the "who, what, where, and when" of that supposed agreement. Although DDK Hospitality offers some indicia that Williams-Sonoma intended to participate in the JV, any favorable inferences that could be drawn from those allegations are sharply undercut by the terms of the JV Agreement—

---

throughout their papers 'and such implied consent is, of course, sufficient to establish the applicable choice of law.'" *Pogodin v. Cryptorion Inc.*, No. 18-CV-791 (ENV)(SMG), 2019 WL 8165040, at *2 n.5 (E.D.N.Y. May 14, 2019) (quoting *Arch Ins. Co. v. Precision Stone, Inc.*, 584 F.3d 33, 39 (2d Cir. 2009)).

which make DDK Hospitality and West Elm the only JV members.[12]  More importantly, the complaint lacks allegations to reasonably infer that, despite the existence of a comprehensive written agreement, the parties actually relied on a separate oral agreement.

The complaint also lacks plausible allegations that Williams-Sonoma agreed to share the JV's profits and losses.  An "indispensable essential of a contract of partnership or joint venture . . . is a mutual promise or undertaking of the parties to share in the profits of the business and submit to the burden of making good the losses." *Abeles*, 2010 WL 446042, at *8 (quoting *Dinaco, Inc. v. Time Warner, Inc.*, 346 F.3d 64, 68 (2d Cir. 2003)).  Here, again, neither written agreement suffices.  The Term Sheet does not contain a provision for sharing profits or losses, and the JV Agreement only does so with respect to DDK Hospitality and West Elm.  (JV Agreement § 12).

At oral argument, Plaintiffs suggested that the allocation of royalties to Williams-Sonoma establishes an intent to share profits and losses.  (4/1/20 Tr. 35:6–19).  But that assertion is unsupported in the complaint.  Moreover, it does not show that Williams-Sonoma ever intended to share losses with any party.[13]  As such, DDK Hospitality's claim against Williams-Sonoma is dismissed.

### iii.    Claim Asserted by DDK Hospitality Against West Elm

The claim by DDK Hospitality against West Elm fares better.  West Elm does not dispute that it was DDK Hospitality's co-venturer or that it owed a fiduciary duty in that capacity.  Instead,

---

[12] At oral argument, Plaintiffs suggested another possibility: Williams-Sonoma is the real party in interest. (4/1/20 Tr. 34:17–35:5). While that may be the case, Plaintiffs have not alleged sufficient facts to support that theory.

[13] It is worth noting that licensing agreements, such as those contemplated in the JV Agreement, likely do not meet the requirement for sharing profits and losses. *See Dinaco*, 346 F.3d at 68 ("[A] royalty agreement is not an agreement to share profits as joint venturers; royalties are simply the contract price paid for licensing a trademark.").

West Elm contends that the cause of action is duplicative of the breach of contract claim and fails to allege damages.

Contrary to West Elm's position, DDK Hospitality's claim is not duplicative.  New York law permits fiduciary duty claims that are "connected with and dependent upon" an allegedly breached contract.  *Clark-Fitzpatrick, Inc. v. Long Island R. Co.*, 70 N.Y.2d 382, 389 (1987).  "[A] contracting party may be charged with a separate tort liability arising from a breach of a duty distinct from, or in addition to, the breach of contract."  *Sommer v. Federal Signal Corp.*, 79 N.Y.2d 540, 551 (1992) (quoting *North Shore Bottling Co. v. Schmidt & Sons, Inc.*, 22 N.Y.2d 171, 179 (1968)).  "It is well settled that the same conduct which may constitute the breach of a contractual obligation may also constitute the breach of a duty arising out of the relationship created by contract but which is independent of the contract itself."  *Mandelblatt v. Devon Stores, Inc.*, 132 A.D.2d 162, 167–68 (1st Dep't 1987).  Here, the fiduciary duty owed arises from West Elm's relationship of higher trust with DDK Hospitality as a joint venturer, not the contractual duties set out in the JV Agreement.[14]  *See, e.g.*, *ESI, Inc. v. Coastal Power Prod. Co.*, 995 F. Supp. 419, 434 (S.D.N.Y. 1998) ("[Plaintiff] has alleged that defendants owed it a duty of undivided loyalty arising from a joint venture relationship created by the [JV] Agreement. This duty of loyalty, although 'connected with and dependent upon' the allegedly breached contract . . . existed independently of the duty to fulfill the contract obligations." (citing cases)).

---

[14] The few cases relied upon by West Elm—none of which involve joint venturers—do not warrant a different result. *See Atlantis Info. Tech., GmbH v. CA, Inc.*, 485 F. Supp. 2d 224, 232 (E.D.N.Y. 2007) (licensor and licensee did not owe fiduciary duties to one another); *Brooks v. Key Trust Co. Nat'l Ass'n*, 26 A.D.3d 628, 630 (3d Dep't 2006) (no duties owed other than those imposed by the contract); *Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*, 837 F. Supp. 2d 162 (S.D.N.Y. 2011) (investors in mortgage-backed securities were not owed extra-contractual duties by mortgage-loan servicer or trustee); *Alitalia Linee Aeree Italiane, S.p.A. v. Airline Tariff Publishing Co.*, 580 F. Supp. 2d 285 (S.D.N.Y. 2008) (duty owed by defendant as an "agent" no different than duty to perform under the contract).

The Court is satisfied that DDK Hospitality's fiduciary duty claim is not a mere repackaging of its contract claim. The complaint alleges that West Elm led a campaign to marginalize DDK Hospitality's involvement in the JV and exclude it from future projects. As part of that effort, West Elm allegedly refused to participate in JV-related matters while secretly planning to pursue opportunities without DDK Hospitality. The fiduciary duty claim is therefore sufficiently distinct. That finding is even more compelling in light of West Elm's insistence that it never breached the JV Agreement. Assuming, *arguendo*, that West Elm did not breach the JV Agreement, it could still be liable for breaching its fiduciary duty to DDK Hospitality. The duty owed by West Elm as a joint venturer extended beyond its obligations under the JV Agreement.

West Elm urges that, even if the claim is not duplicative, DDK Hospitality nevertheless fails to plead damages. At this stage in the litigation, it is reasonable to infer that DDK Hospitality was injured as a result of West Elm's breaches. *See, e.g.*, *105 E. Second St. Assocs. v. Bobrow*, 175 A.D.2d 746, 746–47 (1st Dep't 1991) ("The measure of damages for breach of fiduciary duty is the amount of loss sustained, including lost opportunities for profit . . . by reason of the faithless fiduciary's conduct."); *Milbank, Tweed, Hadley & McCloy v. Boon*, 13 F.3d 537, 543 (2d Cir. 1994) ("breaches of a fiduciary relationship in any context comprise a special breed of cases that often loosen normally stringent requirements of causation and damages"). West Elm's argument is fundamentally a question of fact better suited for summary judgment. Accordingly, DDK Hospitality's claim against West Elm stands.

### D.     Aiding and Abetting Breach of Fiduciary Duty

The claim of aiding and abetting requires "(1) 'a breach by a fiduciary of obligations to another,' (2) 'that the defendant knowingly induced or participated in the breach,' and (3) 'that plaintiff suffered damage as a result of the breach.'" *In re Platinum-Beechwood Litig.*, 400 F.

Supp. 3d 2, 5 (S.D.N.Y. 2019) (quoting *In re Sharp Int'l Corp.*, 403 F.3d 43, 49 (2d Cir. 2005)).

Defendants do not dispute that Wasserman owed DDK Hospitality and DDK Management fiduciary duties, or that he breached those duties.  Rather, Defendants contend that they did not knowingly induce or assist Wasserman's breaches and damages are not alleged.

### i.    Claim Asserted by DDK Hospitality Against West Elm

Having pleaded a direct breach of fiduciary duty, DDK Hospitality's aiding and abetting claim against West Elm is duplicative.  *See, e.g.*, *United States Small Bus. Admin. v. Feinsod*, 347 F. Supp. 3d 147, 168 (E.D.N.Y. 2018) (dismissing aiding and abetting claims as duplicative of breach of fiduciary duty claims); *Capstone Logistics Holdings, Inc. v. Navarrete*, No. 17-Civ-4819 (GBD)(BCM), 2020 WL 3429775, at *7 (S.D.N.Y. June 23, 2020) (same).  As a fiduciary, West Elm owed DDK Hospitality "the punctilio of an honor the most sensitive."  *Meinhard v. Salmon*, 249 N.Y. 458, 464 (1928) (Cardozo, C.J.).  Under that exacting standard, it is inconceivable how West Elm could have aided and abetted Wasserman's breaches without also directly breaching its own fiduciary duty.  Therefore, DDK Hospitality's aiding and abetting claim against West Elm is dismissed.

### ii.    Claim Asserted by DDK Hospitality Against Williams-Sonoma

DDK Hospitality's claim against Williams-Sonoma is different.  With no dispute as to whether a fiduciary duty was breached by Wasserman, the central question is whether Williams-Sonoma knowingly induced or participated in those breaches.  A defendant does so when it "affirmatively assists, helps conceal or fails to act when required to do so, thereby enabling the breach to occur."  *Smallberg v. Raich Ende Malter & Co.*, 140 A.D.3d 942, 944 (2d Dep't 2016) (citation omitted).  Liability will attach where the defendant knowingly contributes to the fiduciary's breach.  *See, e.g.*, *id.* (accounting firm retained partner from rival firm who diverted

prospective client before leaving); *Yuko Ito v. Suzuki*, 57 A.D.3d 205 (1st Dep't 2008) (law firm provided legal advice to business partner who structured a transaction that concealed material information).

The complaint plausibly alleges that Williams-Sonoma, acting through Bellos, affirmatively assisted Wasserman's breaches. As an officer of the company, Bellos's conduct is attributable to Williams-Sonoma. (Am. Compl. ¶ 46). Around May 2018, Bellos allegedly decided to "force" DDK Hospitality out of the JV. (*Id.* ¶ 56). At that time, a Williams-Sonoma director encouraged Bellos to pursue a "partnership" with Provenance for the development of West Elm hotels. (*Id.* ¶ 65). Together with Wasserman, Bellos engaged in several discussions with Provenance regarding a competing venture. (*Id.* ¶ 66). When asked by Phoebus and Bowd about those contacts, Bellos allegedly gave misleading information. (*Id.* ¶ 67). The complaint further alleges that Williams-Sonoma, its in-house attorneys, and Wasserman, negotiated a business arrangement with Provenance that excluded DDK Hospitality. (*Id.* ¶ 71). These allegations sufficiently plead a claim for aiding and abetting.

As with DDK Hospitality's direct claim for breach of fiduciary duty, the complaint permits the reasonable inference that DDK Hospitality suffered damages as a result of Williams-Sonoma's aiding and abetting. Accordingly, DDK Hospitality's claim against Williams-Sonoma withstands dismissal.

### iii. Claims Asserted by DDK Management

Unlike DDK Hospitality's claim against Williams-Sonoma, the claims asserted by DDK Management fall below the requisite pleading standard. As noted above, the complaint lacks almost any particularized allegations involving DDK Management. The complaint's many ambiguous references to all three plaintiffs as "DDK," prevents any reasonable inference that

Defendants knowingly assisted Wasserman in breaching his duties to DDK Management, or that DDK Management suffered any particularized injury as a result of those breaches.[15]  Accordingly, DDK Management's claims are dismissed.

### E.      Unjust Enrichment

Although Defendants argue that the unjust enrichment claims are duplicative and precluded by the JV Agreement, the complaint suffers from a defect far more plain: it does not identify the benefits wrongfully conferred upon Defendants.  While the complaint alludes to certain vague benefits—such as fostering "relationships" or establishing the JV's operating procedures—those largely unsubstantiated allegations fail to nudge the claims from conceivable to plausible. Plaintiffs' unjust enrichment claims are therefore dismissed.

### III.      Motion to Dismiss Supplemental Complaint & Compel Arbitration

West Elm contends that the supplemental claim must be submitted to arbitration because Section 16 of the JV Agreement incorporates the AAA Commercial Rules, which empower an arbitrator "to rule on his or her own jurisdiction."  (ECF No. 68-1 at 13).  Incorporation of those rules, West Elm argues, prevents the Court from considering whether the claim is arbitrable.  A closer examination suggests otherwise.

It is true that the Federal Arbitration Act permits parties to "agree by contract that an arbitrator, rather than a court, will resolve threshold arbitrability questions as well as underlying merits disputes."  *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 527 (2019). However, our case law warns that courts "should not assume that the parties agreed to arbitrate

---

[15] Although the complaint alleges that DDK Management was created to enter into HMAs and TSAs, its interest in those agreements is not entirely clear. (*See* Am. Compl. ¶ 16). The complaint states that all HMA fees are payable only to DDK Hospitality (*id.* ¶ 84), and that all three plaintiffs had an expectation of "additional income" in the TSAs. (*Id.* ¶ 86).

arbitrability unless there is clear and unmistakable evidence that they did so." *Id.* at 531 (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)).  That is because ceding the question of arbitrability absent clear and unmistakable evidence runs the "risk that parties might be compelled to surrender their right to court adjudication, without their having consented." *Metropolitan Life Ins. Co. v. Bucsek*, 919 F.3d 184, 190 (2d Cir. 2019), *cert. denied*, 140 S. Ct. 256 (2019).  That concern is directly implicated here.

While West Elm is correct that incorporating AAA rules typically evinces clear and unmistakable intent to delegate questions of arbitrability, such provisions do not exist in a vacuum. Instead, they must be read in the contexts in which they appear.  Here, that is Section 16 of the JV Agreement, which provides that the only arbitrable issues are "Disputed Matters"—instances where "the [JV] Members (acting through the Board) are unable to agree on a matter requiring Board or Member approval."  (JV Agreement § 16(a)).  As West Elm itself concedes, Section 16 does not submit to arbitration "any" or "all" disputes related to the JV Agreement.[16]  (ECF No. 72 at 18).  Instead, the JV Agreement explicitly limits the scope of arbitrable issues to "Disputed Matters."  That same limitation renders the parties' intent to delegate arbitrability of the supplemental claim neither clear nor unmistakable.

Having determined that the JV Agreement does not clearly or unmistakably delegate the issue of arbitrability, the Court finds, as Judge Pollak did, that DDK Hospitality's supplemental claim is not subject to Section 16's dispute resolution procedures.[17]  In seeking to compel

---

[16] The Court notes that although Section 16 contains a reference to "any and all disputes," that language is in conflict with the rest of the JV Agreement. (*See* JV Agreement § 16(b)).

[17] *Henry Schein* does not require a different result. West Elm errs in reading *Henry Schein* to preclude this Court from examining whether there is clear and unmistakable evidence of an agreement to delegate arbitrability. *Henry Schein* only considered the lower court's application of

arbitration, West Elm relies on the same argument that Judge Pollak previously rejected, namely, that a demand for fees under Section 21(h) is subject to approval by the JV's board.  The Court cannot endorse that strained reading of Section 21(h), which imposes no obligation on the JV and requires no action by its board.  Therefore, the motion to dismiss and compel arbitration is denied.

## CONCLUSION

For the foregoing reasons, Defendants' Rule 12(b)(7) motion is **DENIED**.  Their Rule 12(b)(6) motions are **GRANTED IN PART** and **DENIED IN PART**.  The following claims are dismissed:

1. breach of implied covenant of good faith and fair dealing (Count Two), in its entirety;

2. aiding and abetting breach of fiduciary duty, as asserted against West Elm, and as asserted by DDK Management;

3. breach of fiduciary duty, as asserted by DDK Hotels and DDK Management, and as asserted by DDK Hospitality against Williams-Sonoma; and

4. unjust enrichment (Count Five), in its entirety.

The remaining claims survive.  Defendants' motion to dismiss the supplemental complaint and compel arbitration is also **DENIED**.

SO ORDERED.

Dated:        Brooklyn, New York
             July 20, 2020

                                              /s/
                                              I. Leo Glasser                    U.S.D.J.

---

the wholly groundless exception, but ultimately remanded for a finding as to whether there was clear and unmistakable evidence of an intent to delegate arbitrability. 139 S. Ct. at 531.